The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. All right, we'll hear argument first in number 19-1821 Hayward Industries, Inc. v. Pentair Water Pool and Spa. Mr. Toms. Thank you, and may it please the court. The board committed reversible error because it failed to properly apply the Hayward I claim construction of optimized energy consumption. And once again, failed to consider the DiCenso prior art reference for everything that it teaches. I will address two principal issues, Your Honors. First, DiCenso's express energy optimization feature. And second, the board's improper requirement for automatic mode switching. For optimizing energy, Your Honor, there are four takeaways that I'll discuss in more detail. First, this court required system optimization, which DiCenso teaches. And the board cannot depart from that to require component optimization. Second, DiCenso's optimization teachings map on the construction's requirements. Third, DiCenso shows the controller optimizing energy consumption when disconnected by expressly incorporating its energy optimization teachings into its dual mode capable controllers. And fourth, all the board's findings to the contrary improperly rely upon optional non-limiting teachings of DiCenso. So first, Your Honors, in the prior appeal, this court found that the 597 patent requires consideration of multiple components of the system. And that energy optimization requires holistic factors. The board departed from this requirement. As I understand it, your position is that whether or not it's system optimization or component, that is, pump system optimization, you still win, right? That is correct, Your Honor. DiCenso in paragraph 51, which we provided in annotation on page 17, teaches optimizing at the system and or component level. And DiCenso teaches optimizing at any level of system hierarchy. Yet it's still improper for the board to depart from this court's finding of system-wide optimization. Paragraph 51 also teaches optimizing performance characteristics, which it defines to expressly include energy usage. And second, Your Honors, DiCenso's teachings on this topic show that it maps specifically on what this court said optimizing energy consumption requires. From the Hayward One decision, we understand that the construction of a reduction of energy consumed over time relative to the ultimate pumping function slash application is satisfied by a controller that's capable of doing two things. First, considering information from either other devices in the system or about the system's ultimate application. And two, adjusting the system to use less energy compared to an unoptimized system. Well, DiCenso teaches controllers with precisely this capability. First, DiCenso paragraph 51 teaches specifically, it incorporates this optimizing performance characteristics of a process globally. Optimizing a process is a view of the ultimate pumping application. Paragraph 59 incorporates these teachings into the context of a variable speed fluid pump, just as in the 597 patent. And like the 597 patent, paragraph 59 expressly teaches not only substantial energy savings by matching the system's flow demands, but also the further technique of optimizing across the complete range of operating modes based on the time spent in each mode. Consideration of the complete range of operating modes is a view of the ultimate application. And paragraph 59 expressly teaches energy reductions. DiCenso also teaches in paragraph 84 through 94 a dynamic optimization algorithm that can be used by a controller to determine the system optimal operating point. And DiCenso in paragraph 17 and 18 teaches an optional technique for using correlated efficiency data within an allowable range to reduce energy. And it specifically teaches in paragraph 17 that that allowable range of operation is a range of operation where the process equipment is making good products, which paragraph 18 teaches can be employed to control the pumping system so as to minimize power consumed by the system. Again, considering a range where the system is still making good product to reduce energy consumption falls within this course construction and teaches optimized energy consumption. DiCenso also expressly incorporates its energy optimization teachings into its dual mode capable controllers, such as controller MC1 taught in the system of figures 16 and 17. I'll specifically direct you to paragraph 158 of DiCenso, your honors, which illustrates the optimization aspects of the invention and specifically teaches optimizing one or more performance characteristics, which is a term that's defined by DiCenso paragraph 51 to expressly include energy usage. Then in paragraph 59, it teaches that this pump controller, motor controller MC1, determines the system operating point based off of its consideration of performance characteristic information obtained from other devices in the system or sensors in the system. Again, it's illustrating the optimization aspects of the invention and adjusting the system based off of information it obtains from other devices in the system, which meets the construction. DiCenso also teaches that this controller MC1 is optionally connectable to a host computer when the Hayward-1 cork found meets the master-slave limitation as well. And of course, a controller that's optionally connectable is also optionally disconnectable. So the MC1 controller in the figure 16 and 17 system both optimizes when disconnected from the host and also as a slave when the host is optimizing the system. Fourth, your honors, all of the board's findings to the contrary on energy optimization improperly limit DiCenso's teachings based off of optional non-limiting teachings, things that DiCenso specifically says are not required or optional, which cannot detract from these express energy optimization teachings we've been discussing. As mentioned, DiCenso teaches optimizing at the system or component level and in paragraph 62 specifically teaches optimizing at any level of system hierarchy. So the board is simply incorrect that DiCenso doesn't teach component optimization. Second, the board improperly limits DiCenso's teachings to this correlation of efficiency information, which is expressly taught in paragraph 141 as a non-limiting example of the broader performance characteristic optimization teachings. Also, contrary to what the board says, we know exactly what DiCenso is optimizing at any given point in time because it is optimizing one or more performance characteristics, which is a term it has defined to specifically include energy usage. The fact that DiCenso is versatile enough that it's capable of optimizing other performance characteristics, if the user so chooses, does not detract from its express teachings of optimizing energy usage. So turning to the second issue, your honors, the board's improper reading of switching into the claim limitations. There's three takeaways from this that I will address. First, the board's consideration of switching is simply outside of the mandate because it reopens the master-slave issue and independent issues that were decided in the first case. Second, switching is simply not a requirement of claim one. And third, DiCenso's controllers are capable of switching if that were required. So first, your honors, the board may not reopen the master-slave and independent mode limitations decided in the Hayward One case in the guise of switching, but it did exactly this by finding specifically that nothing in DiCenso discloses switching between these operating modes based on whether the controller is connected to the host. This court specifically remanded to the board for the sole purpose of determining whether the optimizing energy consumption limitation was present. And Pentair actually sought reconsideration to expand the mandate to specifically consider the interrelation or alleged interrelation of optimizing energy consumption and the master-slave and independent mode limitations. And this court denied that reconsideration. So it was not proper for the board to take this issue up on remand. Second, switching is just simply not required by claim one of the 597 patent. You'll note that the word is notably absent. The word switching is notably absent from claim one, and particularly when you compare it to claim 18, which does specifically require automatic switching. The absence of the language that Pentair used to claim that switching functionality is stark. Pentair appears to agree that claim one does not require automatic switching, but what it fails to consider is that any switching of modes that are triggered by a disconnection would be an automatic switching. And also, your honors, you'll note that in the specification of the 597 patent itself, it teaches two specific embodiments of these dual state capable controllers. A first embodiment where the local controller is configurable to operate independently, and another controller where it's configurable to be slave to a host computer. And then another embodiment entirely where it's configured to switch. The court should not read the switching functionality into claim one, which reads on the first configurable embodiment. Finally, to the extent that switching is required, it's taught by claim one. This court found that Dicenza discloses two discrete relationships between the host computer and the individual controllers, and it can employ those relationships alternatively or in combination, which teaches that the controller in C1 has the capability of switching should it be required. And notably, the information that that controller requires taught in 160 does not specifically require any information from the host, as it teaches that the data sources, when it optimizes independently, are from other controllers in the network, sensors, and or the host. So it does not need information from the host. So that, your honors, unless there's further questions, I'll reserve the remainder for rebuttal. Okay, that's fine. Ms. Mel? May it please the court, the board did not ignore the full scope of Dicenza's teachings, nor hold that certain paragraphs limit others. Help me to understand what's going on here. As I understand our prior decision, we said that Dicenza disclosed two things. One, the host computer controlling the pump system, and alternatively, a controller at the pump controlling the pump system. Correct? Correct, that figure 17 in paragraph 160 disclosed alternate embodiments where a controller had those capabilities. Okay, so if that's the case, then it seems to me that paragraph 51 of the Dicenza patent discloses controlling energy efficiency of the pump. Am I mistaken in reading it that way? Well, your honor, I think the more pertinent question- No, but before we get to your more pertinent question, stick with mine for a moment. Well, I don't believe that paragraph 51 teaches optimizing energy consumption as construed by the court in Hayward 1 in paragraph 51 or otherwise. Paragraph 51 simply states that efficiency can be optimized at a system level or a component level, or certain performance characteristics can be quote unquote optimized at a system level. And one of those performance characteristics is- Ms. Noel, Judge Clevenger does reference to the component include the pump. That's what I thought Judge Dyke was perhaps asking. Oh, I'm sorry, I misunderstood you, your honor. A component of the system could be a pump, but we have to be careful when we're talking about Dicenzo of whether we're talking about what we mean by component. But yes, I would agree that a pump could be a component of a system. And then isn't your argument that paragraph 51, although it discloses energy optimization at a component, and a component could include a pump, your argument is because it doesn't specifically include a pump, then it doesn't disclose the teaching of optimization at a pump? The teaching as it respects to the performance characteristics is that the performance characteristics can be optimized at a system level, not at a component level. So that would teach the system- Where does 51 limit the performance levels to the system? I'm looking at paragraph 51. It would help me if you could point to the language in 51 that limits energy optimization as a characteristic to the system, as opposed to a component. When performance characteristics is referred to, your honor, at appendix 1122, one or more performance characteristics of the entire process are optimized globally. Moreover, as discussed herein, aspects of the invention can be employed in connection with optimizing many higher-level systems. The higher-level system optimization may prescribe not operating at an optimum efficiency point with regard to energy utilization. I'm having trouble with that. It says invention in association with optimizing system and or component efficiency. And I thought you agreed that a pump could be a component, and why isn't that saying that you can optimize the component efficiency with regard to energy usage? Two clarifications, your honor. Efficiency is not optimizing energy use. So, DeCenzo says you can optimize individually or rather systematically or at a component level efficiency. It doesn't make the same statement with regard to the performance characteristics. But what is really important here is that this court has given a construction of optimizing energy consumption that doesn't just, that requires more than. Isn't optimizing efficiency one of the performance characteristics? The answer is yes, right? Yes, your honor. Okay. So, just help me. I'm having trouble. You seem to be moving over. The first sentence of paragraph 51 says the figures, they illustrate the invention in association with optimizing system or of component efficiency. That's referring to a performance characteristic, right? Yes, your honor, although it's a little confusing. Yes, and then it goes on to say those performance characteristics may be optimized individually or in combination. Meaning individually would be things like noise, vibration, energy use, or efficiency. You could optimize any one of those performance characteristics. It could be performance considerations itself or in combination with another performance characteristic. So, is what you're saying that it discloses optimizing pump efficiency but somehow doesn't disclose optimizing energy usage? At the component level, yes, your honor. You could optimize energy usage of the full system, but even once we say that, that is not optimizing energy consumption as is claimed and described and as this court construed for the 597. Because this court held that the specification explicitly requires consideration of the interrelation of water movement associated with various functions and or auxiliary devices in conserving energy. That's at appendix 20735. So, optimizing energy consumption is not just reducing the amount of energy over time. Rather, it is a reduction of energy consumed relative to the ultimate pumping application function. And that is the primary lacking disclosure of Desenzo along with the lack of disclosure of optimization of energy consumption when the controller is disconnected from the system. Much less a single dual state pump controller that optimizes energy consumption in both respects. So, simply saying... Does the way we interpreted the claim in the previous decision mean that Desenzo has to teach optimizing energy consumption of the pump as a specific component? Yes, your honor. Okay. So, optimizing energy consumption, it's more than the words optimize and energy use. That Desenzo paragraph 51 lists energy use amongst the performance characteristics that may be optimized is insufficient because it doesn't teach a reduction of consumption relative to the pumping application and function. It's not just a reduction of energy consumed over time, but a reduction relative to the ultimate pumping application and function. And this court was very careful in faithfully reading the specification and requiring that when you talk about optimizing energy consumption, you must consider the interrelation of water movement associated with the various functions and or auxiliary devices in conserving energy. Desenzo doesn't discuss any of that. There's no overlapping water flows or interrelated water movements, for example. And Hayward relies very heavily on paragraph 59 here and in its brief. And as we've laid out in our brief, paragraph 59 is directed to optimal upfront equipment selection. And at best, it teaches that running a variable speed motor at a slower speed uses less power than, let's say, a flow restrictor. That's the table one. But again, simply using less energy is not optimizing energy consumption. But even if we take Hayward's very generous reading that you might modify a flow rate based on what mode you're in, and mode is never described or defined in Desenzo, that's still not optimizing energy consumption. In fact, what Hayward is arguing here with regard to paragraph 59 is nothing more than its prior rejected construction, which was use of a minimal amount of energy possible by continuously adjusting the speed in real-time response to sensed parameters of the water. This court cited that in 20733 and specifically rejected that as meeting the definition of optimizing energy consumption as it is used in the 597. I'm still having problems here with your reading of paragraph 51, which you agree, as I understand it, that it talks about improving pump efficiency. But you're somehow suggesting that the rest of the sentence, which says that the performance characteristics can include optimizing energy efficiency, is not one of the characteristics that can be optimized with respect to the pump. It says component efficiency can be optimized, although it will be recognized that the performance characteristics of a motorized system may be optimized individually or in combination. Which performance characteristics include energy usage? It says, furthermore, the aspects of the invention may be employed to provide optimization at a higher system level. You're talking about a different sentence than I am. I'm talking about the previous sentence, which says that the performance characteristic is energy usage. Yes, Your Honor. I agree with Your Honor, but still, there is no discussion, contemplation, or teaching of the interrelation water movement associated with various functions. Even if we talk about modes within the system, taking it entirely out of water movement, there's no teaching, for example, that you should run two modes at the same time that both require a high flow rate or a lot of energy from the motor. Because by running them both at the same time, you will require less time for the motor to run at that higher point. Nor is there a contemplation, for example, that if the filter is clogged, don't run any of those modes then, but rather wait until the filter is released. All that is contemplated by Desenzo is that if you run a motor at a slower rate... Ms. Noll, you're confusing me. Are you saying now that the problem with paragraph 51 is it doesn't teach how the motor achieves energy use efficiency in the same way that the patent teaches doing it? Yes, that's precisely correct. There's no specific teaching in paragraph 51, as I can see it, about how Desenzo achieves energy usage efficiency in the pump. That's precisely right, Your Honor. Thank you. So what you're saying is, yes, you agree that Desenzo teaches a system in which the energy usage optimization of the pump can occur. It doesn't tell you how to do it, and the patent tells you how to achieve that by these mixed usages, and the failure to teach the specific way to achieve the optimized energy of the pump is the failing of Desenzo. That is certainly the primary failing of Desenzo, I think Your Honor has arrived at. So your argument is that your patent, for example, Desenzo wouldn't infringe your patent because your patent teaches a specific way to do this, and Desenzo doesn't have that. Correct. But that's not what the board said, right? The board said it couldn't really read what Desenzo was showing. There was no... But to answer my question, that's not what the board said. The argument you just made is not one that the board adopted, correct? On Appendix 4, the board held... Yes or no? I don't believe it spoke of infringement or not. What it specifically said was that there was no... No, but what you're arguing is that Desenzo doesn't teach how to optimize energy efficiency, and that's the defect. The board did not say that, correct? I'm trying to answer your question respectfully, Your Honor. It did specifically hold no reduction of overtime relative to the ultimate pumping application function. But it did say that Desenzo, it just isn't concerned with... Just stop for a second. I'm looking at the opinion. The opinion in Appendix 5 says Desenzo simply is not concerned with component optimization. Yes. You're at the same sentence I was at, Your Honor. And so we don't actually know whether it optimizes any particular component at any given time as claimed. And as claimed is this interrelationship of water... What does the board say as claimed? It says it, Your Honor, right where you were reading. It's page 4 of the opinion, which is Appendix 5. And so we don't actually know whether... Where they said as claimed. I'm looking at it. Yes, Your Honor. In the middle of the top paragraph, Desenzo is simply not concerned with component optimization. And so we do not actually know whether Desenzo optimizes any particular component at any given time as claimed. All right. And, Your Honor, if I may... You're saying we can dig out of the as claimed, the requirement that Desenzo would need to teach not only the energy savings efficiency at the pump, but how it is that the patent goes about achieving it? Yes, Your Honor. In the resuscitation, I believe, at the prior page where the board specifically refers to this as well, specifically the reference to the ultimate pumping function application. The second main feeling of Desenzo is, if I may, Your Honors, is there's no single dual mode pump controller that optimizes energy consumption both when connected and independently when disconnected from the control system. In fact, there's no teaching or disclosure of any embodiment in which the controller operates independently to operate energy consumption specifically when disconnected from the control system. Figure 17 and paragraph 160 clearly articulate that the host computer is connected to the controller. And, in fact, MC1, the fact that it can act independently doesn't mean it's disconnected. Those are two very different concepts. And here, there is a specific condition that a structure must be capable of the functionality based on a condition. And that condition is disconnection. Paragraph 160 affirmatively suggests that even when the controllers act independently, they're still connected to the host because it's still able to determine control points based on information from the host. So, obviously, there must be a connection there. Hayward points to figure 16, but figure 16 is not a disconnected state. It's a different embodiment in which there is no host computer whatsoever. Hayward didn't argue this to the board, but even on the substance, never being connected is not the same thing as disconnected. And very importantly, Your Honors, figure 16 is on a different network. It's on network 1602 than figure 17, which is on network 1702. So, 16 is not just 17 disconnected from a computer. It's an entirely different system. Paragraphs 158 and 159 only describe the optimization aspect employed with respect to the controllers. There's no mention of a host computer. Figure 9 also doesn't teach disconnected. And, again, Hayward didn't, while it argues it now, it didn't make that argument to the board. It sounds as though, in this respect, you're trying to re-argue what we decided earlier, which is that there are two different embodiments, one of host control and one of local control, and that those two embodiments can be in a single device. Oh, no, Your Honor. This court, in making its holding, was looking at figure 17 itself and paragraph 160. And you held that figure 17 could have a controller that acted independently or as a slave. But within all of that, figure 17 is always connected to the host computer. You didn't address or make any ruling on what figure 17, what would happen if it was ever disconnected from a host computer. So, those are two very different things. And if you look at the claim itself, master-slave is in the third and fourth clauses, but optimizing energy consumption is found in clauses 6 and 7. And clauses 6 and 7 specifically call out the disconnected and connected state. So, respectfully, I don't believe we are challenging your prior decision. Also, contrary to Hayward's suggestion in its reply, with respect to figure 9, the alternatively or in combination language of 134 does not refer to whether the connection is optional. It only refers to an alternative type of information that may be sent to the control system. That's found, Appendix 1132 at 134. Now, Hayward argues in his reply at page 10 that a person of ordinary skill would immediately see the combinability of these figures. Now, we disagree, but even if that were true, it misses the point. Critically, you can't have anticipation when you have a missing element, even if a person of ordinary skill in the art might immediately envisage that missing element. As this court recently held, quote, the Tenemental does not permit the Board to fill in missing limitations simply because a skilled artisan would immediately envision them. That's the United States... Excuse me. Mr. Chestnut, is Ms. Knoll still within her time, or is she over time? No. She's about over seven minutes. Oh, okay. I think unless there are further questions from the panel, Ms. Knoll, we're about out of time. Does any of my colleagues have further questions for Ms. Knoll? I just had one question. I assume, Ms. Knoll, that we agree with you that PASENZO doesn't teach energy optimization. What are we supposed to do with the challenge that claims 33 and 59 is obvious? I'm sorry, Your Honor. Your question is if you agree with us? Yeah. That it does not disclose? Yeah. Those are dependent claims, and that would also require the optimizing energy consumption. So you could simply affirm the Board's decision. Okay. Thank you, Ms. Knoll. Thank you. Mr. Toms, you have a couple minutes. Thank you, Your Honor. I'll address just a couple of points. So first, the PASENZO does specifically, as the Court pointed out, show component optimization. And I'll also highlight paragraph 62 teaches that its invention affords implementation across numerous system levels or hierarchies, e.g., the individual machine, the cluster of machines, the process, on up. And in paragraph 50, it teaches that the invention provides methods and systems for controlling a motorized system in order to achieve set-point operation, as well as optimize one or more performance characteristics associated with the system. So this is clearly showing that the PASENZO contemplates and expressly teaches that you can optimize at any level of system hierarchy. And particularly, I'll also direct you to paragraph 73, which I note that Pentair cites in its briefs as a demonstration or a description of this efficiency correlation technique, which the first line of paragraph 73 says, implementing variable speed motor control for pumping applications can provide direct savings and reduce energy consumption, as described herein. And I'll also note back to what I discussed about paragraph 17, and then paragraph 7 teaches that efficiency is energy efficiency in this context as well. Mr. Thomson, Judge Klobinger, Ms. Noel argues that her client's claim teaches how to maximize the energy efficiency of the pump, how specifically to do that, and that paragraph 51 doesn't disclose the how. You heard that argument. What's your response? Thank you, Your Honor. So our response is that the construction does not require any specific technique for optimizing energy consumption, and that's precisely what this court found in the Hayward One opinion. I'll note that Pentair proposed the construction of a reduction in energy consumed over time relative to the ultimate pumping application function, and that construction is literally meant by any reduction, however it's achieved, so long as it has a view towards the ultimate pumping function and application. And as I discussed, the CINSA teaches that in multiple places. Paragraph 17 and 18 define a range where the system still makes good product, and it teaches using efficiency information to adjust the system to specifically use less power. Paragraph 59 teaches optimizing across the complete range of operating modes. Paragraph 64 teaches an algorithm for determining the optimal operating point, and so on. Okay, Mr. Thomson, I think you're out of time unless there are other questions from my colleagues. No, thank you, Your Honor. Hearing none, thank you very much. Thank both counsel. The case is submitted. Thank you, Your Honor.